```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

REHAB CHOICE INCORPORATED         §
                                  §
VS.                               §  CIVIL ACTION NO. 4:07-CV-314-Y
                                  §
CLC HEALTHCARE, INC., ET AL       §
```

### ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND FOR HEARING FOR TURNOVER ORDER

The Court has before it the emergency motion (doc. #23) of plaintiff Rehab Choice Incorporated ("Rehab") requesting that the Court temporarily restrain and enjoin certain defendants from closing existing or opening new bank accounts, dispersing any money from any account in their possession and control, and diverting or causing to be diverted any funds that may be deposited in any account they possess and control. Rehab also requests that the Court order these defendants to turn over any nonexempt property in their possession or under their control that could be used to satisfy a judgment against them. After review of the motion and the response, the Court DENIES the motion.

I.   Factual Background

Rehab filed a petition in the 342nd Judicial District Court, Tarrant County, Texas, for breach of contract that also alleged single-business-enterprise and alter-ego claims against numerous corporate defendants and three individual defendants. According to Rehab, it contracted with the corporate defendants in this case (except CLC Healthcare, Inc.) to provide rehabilitative ancillary

services for the treatment of residents and patients of skilled nursing facilities that were operated by the corporate defendants. Rehab claims it billed the corporate defendants for its services but never received payment. Rehab also alleges that none of the corporate defendants currently operate, manage, or control any of the facilities that Rehab served.

After the corporate defendants were served and failed to answer the petition, the state court issued an interlocutory default judgment against the following corporate defendants: CLC Healthcare, Incorporated; Centers for Long Term Care of Iowa, Incorporated; Centers for Long Term Care of Gardner, Incorporated; Centers for Long Term Care of Olathe, Incorporated; Centers for Long Term Care of Salina; Beeville Regional Nursing & Rehab Center, Incorporated; BMW Healthcare, Incorporated; Centers for Long Term Care of Texas, Incorporated; Centers for Long Term Care of Richland Hills, Incorporated; Centers for Long Term Care of Woodridge, Incorporated; Centers for Long Term Care of Bonner Springs, Incorporated; and Centers for Long Term Care of Tappahannock, Incorporated (hereinafter, "the Defaulting Defendants"). Soon thereafter, each of the Defaulting Defendants filed an answer denying the allegations in Rehab's petition. Rehab then filed a motion in the state court seeking an entry of final judgment against the Defaulting Defendants, and the Defaulting Defendants filed a motion to set aside the state court's interlocutory default

2

judgment. In their motion, the Defaulting Defendants explained that they had a long-term relationship with two attorneys who handled all of their litigation. They explained that their failure to timely answer was because their two attorneys unilaterally withdrew their representation and failed to inform them of this pending action. The Defaulting Defendants claimed they received actual notice of Rehab's lawsuit when it moved for default and had served its petition on one of their corporate representatives from whom Rehab sought to recover personally. Rehab's motion for final default judgment and the Defaulting Defendants' motion to set aside the interlocutory default judgment were pending in the state court when this case was removed to this Court. After the removal, this Court issued an order rendering moot, without prejudice to refiling, all pending motions filed in the state court before the removal.

II. Analysis

    A.   Standard

Under well settled Fifth-Circuit precedent, a temporary restraining order ("TRO") and a temporary injunction are extraordinary remedies that should not be granted unless the movant proves: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury to the movant outweighs any

3

harm to the nonmovant that may result from the injunction; and (4) that the injunction will not adversely affect the public interest. *See Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *see also Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990); *Canal Auth. of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The party seeking the injunction must prove all four elements. *Id.*

B.  Discussion

1.  Injunction

To be entitled to an injunction, Rehab must prove that it has a substantial likelihood of success on the merits. Rehab fails to meet this burden. In its motion, Rehab restates the factual allegations contained in its petition in support of its breach-of-contract claim. Rehab argues that it has a substantial likelihood of success on the merits because the Defaulting Defendants only "filed general denials" after the state court had entered its interlocutory default judgment. Plus, Rehab contends that the Defaulting Defendants' motion to set aside the interlocutory default judgment, based on their having "a meritorious defense," fails to allege "any specific facts or legal basis for this defense." (Pl.'s Mot. for TRO at 12.)

Rehab has not presented the Court with any evidence to substantiate any of its allegations. The Court does not have the

4

contract. There is no evidence that Rehab performed under the alleged contract as it claims. And there is no evidence that the Defaulting Defendants failed to pay for the services Rehab claims it rendered under an alleged contract. Rehab solely offers the affidavit of its chief financial officer who swears that all of the statements of fact contained in Rehab's motion "are true and correct." (Pl.'s Mot. for TRO at Exhibit 7.) In essence Rehab has argued that it has a substantial likelihood of success because it says so.

"It is a basic tenant of [Texas] jurisprudence that the law abhors a default." *Hock v. Salaices,* 982 S.W.2d 591, 593 (Tex. App.—San Antonio 1998, no pet.). Federal jurisprudence equally disfavors default judgments. See *Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir. 2001)("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."). Furthermore, "a party is not entitled to a default judgment as a matter of right even when the defendant is technically in default." *Id.*

Although untimely, the Defaulting Defendants' appearance and explanation for their untimely answer will probably be sufficient to vacate the state court's interlocutory default judgment. Their answer, after all, was not grossly tardy, and as soon as they became aware of the action and secured counsel, they answered denying all of the allegations in Rehab's petition. The fact that

5

the Defaulting Defendants' answers did not allege any specific facts to support their denials of Rehab's claims does not prove that Rehab has a substantial likelihood of success; the Court is unaware of any rule of civil procedure that requires the Defaulting Defendants to aver facts to support their denials.  Moreover, while the Defaulting Defendants' answers do not set forth any defenses, affirmative or otherwise, their answers do demand that Rehab prove its allegations.  Their motion to set aside the state court's interlocutory default judgment, however, claims that they have meritorious defenses.

The Federal Rules of Civil Procedure are very lenient in allowing a party to amend its pleading, and it is possible that the Defaulting Defendants may seek leave to amend their answers so that they may assert defenses to Rehab's claims.  *See* FED. R. CIV. P. 15; *Martin's Herend Imports, Inc. v. Diamond & Gem Trading,* 195 F.3d 765, 770 (5th Cir. 1999).  Being that this action only was commenced in mid-January 2007, the Court would have to strain to find prejudice to Rehab in allowing the Defaulting Defendants to amend their answers.  And even if the Defaulting Defendants do not amend, it is Rehab's burden to prove the allegations in its petition before being entitled to the remedies it seeks.  More specifically, Rehab must prove that it has a substantial likelihood of success on the merits before being entitled to the equitable injunctive remedies it seeks.  Rehab fails to meet that burden.

Further, Rehab has failed to prove a substantial threat of irreparable harm in the absence of injunctive relief. An injury is irreparable only if it cannot be undone through monetary remedies. *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (Former 5th Cir. Nov. 1981). In other words, injuries that can be compensated by money damages at a later time generally are not irreparable and do not warrant granting injunctive relief. *See Playboy Enters. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997); *Danden Petroleum, Inc. v. N. Natural Gas Co.*, 615 F. Supp. 1093, 1099 (N.D. Tex. 1985). Rehab solely seeks monetary relief from Defendants' failure to pay. Although Rehab asserts that any future judgment could not be collected because of Defendants' "likely" insolvency,[1] Rehab offers no probative evidence that Defendants would be unable to pay. (Pl.'s Mot. for TRO at 11.) Indeed, Defendants state that they intend "to pay all legitimate creditors." (Defs.' Br. in Support of Resp. at 10.) Rehab's allegation of irreparable injury is too speculative to warrant the relief it seeks.

Rehab has also failed to prove that the threatened injury to the Defaulting Defendants it seeks to enjoin is outweighed by the harm that may result to Rehab in the absence of an injunction. Rehab seeks to prevent the Defaulting Defendants from closing or

---

[1] *See Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006) (holding injunctive relief in case involving disclosure of trade secrets possibly needed if disclosing defendant unable to pay future money judgment).

7

opening bank accounts, dispersing any money from any account in their possession and control, and diverting or causing to be diverted any funds that may be deposited in any account they possess and control. In essence, Rehab is asking the Court to attach or sequester the Defaulting Defendants' accounts.

Rehab argues that its injury outweighs any injury the Defaulting Defendants may suffer because it claims "all of the Defaulting Defendants have ceased operations of their facilities." (Pl.'s Mot. for TRO at 12.) Rehab claims that none of the Defaulting Defendants are "currently incurring any costs for overhead or management of these defunct facilities." (*Id.*) Because the Defaulting Defendants are allegedly defunct, Rehab argues that they "may transfer funds to any person or party without regard to paying their creditors." (*Id.* at 13.)

Again, Rehab has offered the Court no evidence that all of the Defaulting Defendants are themselves defunct or that they are no longer operating any of their skilled nursing facilities. Rehab has presented the Court with evidence that one of the Defaulting Defendants, Centers for Long Term Care, Tappahannock, Incorporated ("Tappahannock"), has filed for Chapter 11 bankruptcy in Nevada. But Tappahannock is not included in Rehab's motion for an injunction and that fact does not establish that the other Defaulting Defendants are also defunct. At best, Rehab offers the affidavit of its chief financial officer who swears this is true. That is

8

simply insufficient.

Without knowing for sure whether the Defaulting Defendants themselves or the nursing facilities they run have ceased operations, the Court cannot be sure that an order freezing their accounts would not cause them serious harm. Such an order would prevent them from paying any of their employees or from maintaining any necessary overhead for continued operations. In other words, such an order could be completely crippling to their business. Rehab has not met its burden of proving that its harm in not being granted injunctive relief is outweighed by the harm to the Defaulting Defendants of being enjoined as requested by Rehab.

Having failed to establish three of the four injunctive-relief requirements, Rehab is not entitled to the extraordinary relief it seeks.

2.  Turnover Hearing

Rehab argues that since it "does not know where the Defaulting Defendants bank nor in what form those assets may be held, a turnover order is justified and appropriate." (Pl.'s Mot. for TRO at 14.) The Texas turnover statute provides a judgment creditor with aid from a court through injunction or other means to reach property of a judgment debtor in satisfaction of a judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (Vernon Supp. 2007).

As it stands, Rehab is not a judgment creditor. While there is currently an interlocutory default judgment against the

9

Defaulting Defendants, it is not final.  Furthermore, all of the Defaulting Defendants have since appeared and filed answers to Rehab's petition.  In light of the law's disfavor for default judgments as discussed above, it is highly unlikely that the Defaulting Defendants will remain in default.  Thus, Rehab is not entitled to avail itself of the Texas turnover statute until it has obtained a final judgment in its case against the Defaulting Defendants.

### 3. Tappahannock's Bankruptcy

Finally, the Court has serious questions as to whether it can enter an order to enjoin the Defaulting Defendants because of Tappahannock's bankruptcy.  Rehab's petition alleges that all of the corporate defendants in this case (including Tappahannock) operated as a single business enterprise and not as separate corporate entities.  Rehab claims that they all have common employees, officers, and directors.  Rehab alleges that they all operate from a centralized accounting, have common business names, and have undocumented transfers of money and unclear allocation of profits and losses between one another.  Rehab also seeks to pierce the corporate veil as to some of the corporate defendants and hold the individual defendants in this case, who are the corporate officers, personally liable for the corporate debts.

Under 11 U.S.C. § 362(a), there is an automatic stay of any

10

judicial proceeding against a defendant who files for bankruptcy. The general rule is that the stay is only applicable to the defendant in bankruptcy and not to any nonbankrupt co-defendants or third parties. *In re S.I. Acquisitions, Inc.*, 817 F.2d 1142, 1147 (5th 1987). There are, however, limited situations where the § 362 stay may apply to actions against nonbankrupt co-defendants:

> There are cases [under § 362(a)(1)] where a bankruptcy court may properly stay the proceedings against nonbankrupt co-defendants, but . . . in order for relief for such nonbankrupt defendants to be available under (a)(1), there must be unusual circumstances and certainly something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties. **This unusual situation, it would seem arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.**

*A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986)(internal quotations omitted)(emphasis added); *see also S.I. Acquisitions*, 817 F.2d at 1147-48.

Section 362(a)(3) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In essence, § 362(a)(3)

11

"implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor." *S.I. Acquisitions,* 817 F.2d at 1148.

The purpose of the stay, the Fifth Circuit explained, "was to give the debtor and its property a breather from creditors' assaults, to prevent a multi-jurisdictional rush to judgment by numerous creditors, **and to ensure that the interests of all creditors of similar station were treated equally and fairly**." *Id.* (emphasis added). In *S.I. Acquisitions,* the Fifth Circuit held that the automatic stay under § 362(a)(3) applied to all defendants in a state-court action that was based on alter-ego claims. *Id.* at 1151.

Whether the stay under section 362(a)(3) applies to nonbankrupt co-defendants, the Court must "ask . . . two important questions:  (1) does [Plaintiff's] cause of action based on alter ego under Texas law belong to the corporate debtor; or, (2) does [Plaintiff's] cause of action based on alter ego seek to recover or control property of the debtor?" *Id.*  An affirmative answer to either question necessitates applying the stay. *See id.*

Under Texas law, piercing the corporate veil is a remedy, not a cause of action. *Id.* at 1152 n.11. Texas law recognizes eight distinct methods of piercing the corporate veil, including alter-ego claims and claims that two or more businesses were operated as a single enterprise. *See Town Hall Estates-Whitney, Inc. v.*

12

*Winters,* 220 S.W.3d 71, 86 n.11 (Tex. App.—Waco 2007, no pet.). "Based upon equitable concerns, an alter ego remedy applies when there is such an identity or unity between a corporation and an individual or another entity such that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust." *S.I. Acquisitions,* 817 F.2d at 1152. Although there are varying methods available to pierce the corporate veil, all of them rest "upon an identity theory—the corporation and the control person or entity are considered to be a single entity." *Id.* These remedies are available to all creditors of a corporation so long as the requisite melding of the corporation with the other corporate entities are established. *Id.*

Because Rehab as alleged that all of the corporate defendants named in its petition are a single business enterprise and not separate corporate entities, the stay under § 362(a)(3) seems to apply. Rehab is seeking, potentially, property from these corporate entities that may very well be property of the bankruptcy estate of Tappahannock. If in fact, as alleged by Rehab, all of the corporate defendants commingled their assets, their profits and losses, the payment of wages to their employees, and fluidly transferred funds between one another, then the bankruptcy estate may very well extend to the assets of each of the corporate defendants. Thus, Rehab's cause of action does potentially seek to recover property of Tappahannock, the debtor.

13

Recognizing that the stay under § 362(a)(3) should apply to all of the corporate defendants in this case would carry out the general policies of the bankruptcy code. As mentioned above, one of the purposes of the stay is to preserve the status quo so that the bankruptcy court can ensure that all creditors of the bankruptcy estate are treated equitably and fairly. By allowing Rehab to continue with its cause of action against the remaining nonbankrupt corporate defendants, which it alleges are part of a single enterprise with the bankrupt corporate defendant, "would undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly." *S.I. Acquisitions,* 817 F.2d at 1153. It would allow Rehab to collect from a pool of assets (assuming it proves its case against the nonbankrupt parties) that should be available to all of Tappahannock's creditors. *Id.* Not staying the action "would promote the first-come-first-served unequal distribution dilemma that the Bankruptcy Code . . . sought to prevent." *Id.* Moreover, if Rehab were allowed to continue its cause of action and seek relief though its alter-ego claims, so too could other creditors, resulting in the multi-jurisdictional rush to judgment that the Code seeks to prevent. Thus, the Court has serious reservations as to whether it can effectively ignore the automatic stay imposed by § 362(a)(3). Rehab's best chance for relief may rest in the Nevada bankruptcy court.

14

III. Conclusion

    Because Rehab has failed to prove that it has a substantial likelihood of success on the merits and because Rehab has failed to show that any harm the Defaulting Defendants may suffer from a restraining order is outweighed by the harm Rehab will suffer in the absence of a restraining order, the Court DENIES Rehab's motion for a TRO.  Rehab's motion for preliminary injunction is also DENIED for the identical reasons as the denial of the motion for TRO, without prejudice, of course, to Rehab's right to renew its motion for preliminary injunction if it can support such a motion with sufficient proof to satisfy the four factors identified by Fifth-Circuit precedent.  Further, because Rehab is not a judgment creditor of the Defaulting Defendants, the Court DENIES its request for a turnover hearing.

    SIGNED July 2, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE